UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDJRON THOMPSON,

    Plaintiff,

v.

Case No. 16-14095
HON. DENISE PAGE HOOD

CITY OF DETROIT, *et al.*,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#42]**

**I.    INTRODUCTION**

Plaintiff filed this 42 U.S.C. § 1983 action on November 18, 2016, alleging that Defendants violated his constitutional rights when they wrongfully searched his house and made him lay naked for 35-45 minutes during the execution of search. On February 8, 2018, Defendants filed a Motion for Summary Judgment, and the Motion is fully briefed. For the reasons that follow, the Court grants in part and denies in part Defendants' Motion for Summary Judgment.

## II. BACKGROUND

Plaintiff Andrjon Thompson bought the house at 16089 Manning,[1] Detroit, Michigan (the "Property") in 2012 or 2013, and the deed was filed with Wayne County's Register of Deeds. The address on his driver's license reflects the 16089 Manning address. Plaintiff has lived at that address since he purchased the Property, and his girlfriend and their young daughter also live there. Plaintiff represents that the house on the Property is and was secured with locks and security doors at the time of the events relevant to this lawsuit.

On July 6, 2016, based on a search warrant obtained through the efforts of Defendant Craig Stewart, a Detroit Police Department officer, the house on the Property was searched by officers from the Detroit Police Department. The officers involved in the search included Sergeant Diaz Graves, Jason Clark, Stewart, Leo Rhodes, and Nicholas Bukowski (the "individual Defendants"). Stewart had caused the Wayne County Prosecutors Office to request, and 36th District Court Magistrate

---

[1]Plaintiff's First Amended Complaint does not identify the address of the house where he resided and the Defendants searched on July 6, 2016. The search warrant affidavit indicates that the house to be searched was at 16089 Manning, and Plaintiff testified that he lived at 16089 Manning and 16089 Manning was the address on his house and his driver's license. The number painted on the curb in front of the house also was "16809." The Wayne County Records attached as an Exhibit to Defendants' Brief in Support of their Motion for Summary Judgment: (a) identify the house as being located at 16087 Manning; and (b) reflect that the Property was owned by the Detroit Land Bank Authority as of January 13, 2016, nearly six months before the search of the Property was executed. Dkt. No. 42, Ex. C.

Millicent D. Sherman to issue, a search warrant on that date. Stewart's affidavit in support of the search warrant application for 16089 Manning stated that he had observed narcotic trafficking activity on the Property on May 23, 2016, July 4, 2016, and July 5, 2016. Based on submitted police activity logs, it appears May 23, 2016 may be a typo (because there is no indication of surveillance or activity on Manning Street on the May 23, 2016 police activity log). The intended date for Stewart's affidavit (and the one the Court will use for purposes of this Order) likely was May 24, 2016, even though the closest address to 16089 Manning that was listed as being under surveillance on the May 24, 2016 police activity log was 15889 Manning (presumably about two blocks away).

When the individual Defendants knocked on the door at the house on the Property on July 6, 2016, no one answered. The individual Defendants then forced entry into the house. Plaintiff was showering during the knock and entry, and he opened the bathroom door to discover the officers with their firearms pointed at him. Plaintiff's request to be allowed to get dressed was denied, and he was ordered to the floor and required to lay there naked for an extended period of time. None of the individual Defendants intervened or allowed him to get some clothes to wear. The individual Defendants did not find any evidence of narcotics and eventually released Plaintiff without any charges. Plaintiff was detained for 35-45 minutes before the

3

Defendant officers left. Defendants Graves and Stewart allowed Plaintiff to get up and put on some shorts before the officers left – though it is unclear how long prior to the Defendant officers' departure that Plaintiff was allowed to put on the shorts.

Plaintiff's First Amended Complaint alleges the following counts: (1) 42 U.S.C. 1983 claims against the individual Defendants with respect to the search itself and the manner in which the search was executed; (2) a municipal liability claim against Defendant City of Detroit. Plaintiff claims he has suffered "significant emotional distress, anxiety, sleeplessness, and appetite loss due to" the execution of the search warrant. Plaintiff also claims that he suffered from humiliation and embarrassment because he had to lay naked on the floor for an extended period of time.

## III. APPLICABLE LAW

### A. Rule 56

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

**B.     Qualified Immunity**

As recently stated by the Supreme Court:

The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the

5

plainly incompetent or those who knowingly violate the law.

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and quotation marks omitted). Qualified immunity is a two-step process. *Saucier v. Katz*, 533 U.S. 194 (2001). First, the Court determines whether, based upon the applicable law, the facts viewed in a light most favorable to the plaintiff show that a constitutional violation has occurred. Second, the Court considers whether the violation involved a clearly established constitutional right of which a reasonable person in the defendant's position would have known. *Saucier v. Katz, supra.*; *Sample v. Bailey*, 409 F.3d 689 (6th Cir. 2005). Only if the undisputed facts, or the evidence viewed in a light most favorable to the plaintiff fail to establish a prima facie violation of clear constitutional law can this court find that the Defendants are entitled to qualified immunity. *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997).

Once a government official has raised the defense of qualified immunity, the plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (citation omitted). A plaintiff also must establish that each individual defendant was "personally involved" in the specific constitutional violation. *See Salehphour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) (unpublished) ("It is well-

settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants").

## IV. ANALYSIS

The individual Defendants contend they are entitled to qualified immunity on all claims because there is no evidence that they violated a clearly established constitutional right that is actionable pursuant to 42 U.S.C. § 1983. Defendants' argument is premised on the fact that they executed a search warrant on the Property that the assistant prosecutor requested and the magistrate issued, such that there was no reason to question the validity of the search.

The search warrant affidavit states that, on each of May 24, 2016, July 4, 2016, and July 5, 2016, Stewart observed narcotics activity at the Property. Specifically, Stewart averred that, on each of those dates, one or more persons walked onto the porch at the Property and knocked on the door. In four instances, Defendants indicate that someone opened the door from inside the house and passed out a "small item in a cupped hand motion" in exchange for "paper currency" provided by the visiting person. In the fifth instance cited in the search warrant affidavit, a visitor passed a "white hand sized package" to a person in the house who had opened the door in exchange for an "item with four fingers extended."

Plaintiff testified, and has submitted an affidavit stating that, on the dates set

forth in the search warrant affidavit: (a) the house was secured; (b) he and his girlfriend were not at home; (c) no one was authorized to come in during his absence; (d) he saw no evidence of any break in or unauthorized entry into the house; and (e) neither he nor his girlfriend were ever involved in narcotics trafficking at any time, including out of the house at 16089 Manning. Dkt. No. 44, Ex. 1. Plaintiff specifically states in his affidavit that neither he nor his girlfriend "nor anyone was in our home involved with narcotics or any other kind of sales as described in Stewart's [search warrant] affidavit on th[e] days" the narcotic trafficking set forth in the search warrant affidavit. *Id.*

**A.    The Search**

> The Fourth Amendment requires that arrest warrants be issued only upon a showing of probable cause. *Greene v. Reeves*, 80 F.3d 1101, 1105 (6th Cir.1996). In a civil rights case, investigators are entitled to rely on a judicially-secured arrest warrant as satisfactory evidence of probable cause. *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir.1989) (citations omitted). However, "an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Id; see also Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir.1999); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989).
>
> An investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest. *Ahlers*, 188 F.3d at 373. To overcome an officer's entitlement to qualified immunity, however, a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth

and (2) that the allegedly false or omitted information was material to the finding of probable cause. *See Hill*, 884 F.2d at 275 (applying test set forth in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1973), to evaluate a § 1983 claim); *see also Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir.2000); *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir.1995); *Packer v. City of Toledo*, 1 Fed.Appx. 430, 433–342 (6th Cir. 2001) (unpublished opinion) (noting that the materiality of the false information used to procure a search warrant was a key issue in deciding whether to grant qualified immunity). In other words, Vakilian must show that the judge would not have issued the warrant without the allegedly false material.

*Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003).

"Where qualified immunity is asserted, the issue of probable cause is one for the court since 'the entitlement is immunity from suit rather than a mere defense to liability.'" *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 227-28 (1991) (citation omitted), and *Burda Bros., Inc. v. Walsh*, 22 F. App'x 423, 432 n.8 (6th Cir. 2001) ("It is clear that in *Hill*, as in *Yancey* (which is cited in *Hill*), the issue is one for the jury only when the evidence creates a genuine issue of material fact for trial.")).

The individual Defendants argue that they are entitled to qualified immunity *vis a vis* the search itself. Except for Stewart, there is no evidence that any of the individual Defendants participated in, or had any knowledge of, the alleged false statements made by Stewart with respect narcotics trafficking at 16089 Manning on May 24, 2016, July 4, 2016, or July 5, 2016. As the individual Defendants other than Stewart were not involved in obtaining the search warrant, and there is no evidence

9

that they were aware of any false statements therein, those Defendants were entitled to rely on the search warrant. *See, e.g., Baranski v. Fifteen Unknown Agents*, 452 F.3d 433, 441 (6th Cir. 2006); *Yancey*, 876 F.2d at 1243. The Court holds that Defendants Graves, Clark, Rhodes, and Bukowski are entitled to qualified immunity *vis a vis* probable cause to conduct the search.

As to Stewart, the qualified immunity analysis is much different. Plaintiff alleges that Stewart lied about observing narcotics transactions at 16089 Manning on the dates set forth in the affidavit. In Plaintiff's affidavit, he avers that there could not have been anyone inside the house at 16089 Manning on May 24, 2016, July 4, 2016, and July 5, 2016 to make the exchanges described by Stewart in the search warrant affidavit. The fact that Stewart submitted a subsequent affidavit rebuking Plaintiff's affidavit and affirming Stewart's search warrant affidavit, *see* Dkt. No. 45, Ex. K, does not overcome Plaintiff's affidavit for purposes of the instant summary judgment motion, as the Court must view all facts in a light most favorable to Plaintiff. The Court concludes that Plaintiff has made a substantial showing that Stewart stated deliberate falsehoods regarding the narcotics trafficking at 16089 Manning on May 24, 2016, July 4, 2016, and July 5, 2016. *Vakilian*, 335 F.3d at 517. The Court finds that the allegedly false information was material to the finding of probable cause by the magistrate. *Id.* If the allegedly false statements regarding the narcotics

10

transactions on those dates are removed from Stewart's search warrant affidavit, the Court finds that there would not be probable cause to issue the warrant. Because Stewart supplied the allegedly false statements to the prosecutor and magistrate, he cannot rely on the judicial determination of probable cause made by the magistrate when the magistrate issued the warrant. *See Vakilian*, 335 F.3d at 517; *Ahlers*, 188 F.3d at 373; *Hill*, 884 F.2d at 275. The Court denies Stewart's claim that he is entitled to qualified immunity for the search.

The Court also finds that Stewart is not entitled to summary judgment on the merits. As stated in *Hill*,[2] a case that also involved false statements made deliberately or with reckless disregard for the truth in a search warrant affidavit:

> As against McIntyre, the Hills attack the very validity of the warrant on which their house was searched. An action under Sec. 1983 does lie against an officer who obtains an invalid search warrant by making, in his affidavit, material false statements either knowingly or in reckless disregard for the truth. *Donta v. Hooper*, 774 F.2d 716, 718 (6th Cir.1985) (per curiam), *cert. denied*, 483 U.S. 1019, 107 S.Ct. 3261, 97 L.Ed.2d 760 (1987). This standard originates in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), a suppression case in which the Supreme Court defined the Fourth Amendment's guarantee in the context of search warrants issued on the basis of false affidavits: only if "a false statement [was made] knowingly and intentionally, or with reckless disregard for the truth" and if, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to

---

[2]*Hill* addressed whether the trial court erred in granting a directed verdict for the officers, not whether the officers were entitled to qualified immunity. In evaluating a motion for directed verdict, as in evaluating a motion for summary judgment, the Court views all facts in a light most favorable to the non-moving party–in this case, Plaintiff.

11

> establish probable cause," is there a constitutional violation under the Fourth Amendment. *Id.* at 155-56 . . . While the Court is necessarily the factfinder in a *Franks* suppression hearing preliminary to a criminal trial, in a Sec. 1983 action factfinding under the *Franks* standard is the province of the jury. *Hindman v. City of Paris, Tex.*, 746 F.2d 1238 (5 th Cir. 1984). Indeed, in a recent Sec. 1983 case our Circuit has held that the question whether the judicial officer issuing the warrant would have done so even without the knowingly or recklessly false statement is one for the jury, and we remanded the issue for trial. *Yancey v. Carroll County*, 876 F.2d 1238 (6th Cir. 1989).

*Id.* at 275-76. As Plaintiff argues, the Sixth Circuit still recognizes that rule. *See, e.g., Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010); *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006).

The Court finds that there is a genuine dispute whether the statements in the search warrant affidavit were false, which means there is material question for the jury as to whether the magistrate had probable cause to issue the warrant. The Court holds that Stewart is not entitled to summary judgment on Plaintiff's claim that there was not probable cause for the search.

**B.     Expectation of Privacy**

Defendants argue that Plaintiff had no reasonable expectation of privacy because he had no ownership interest in the Property. An individual seeking Fourth Amendment protection must "demonstrate that he had a legitimate expectation of privacy" in the premises searched. *United States v. Hunyady*, 409 F.3d 297, 300 (6th Cir. 2005). The "factors to be considered in determining whether there was a

12

legitimate expectation of privacy include ownership, lawful possession, or lawful control of the property." *Id.* (citing *United States v. McRae*, 156 F.3d 70, 711 (6 th Cir. 1998)). "A [party] must satisfy a two-pronged test to show a legitimate expectation of privacy: 1) he must manifest an actual, subjective expectation of privacy; and 2) that expectation is one that society is prepared to recognize as legitimate." *Hunyady*, 409 F.3d at 301 (quoting *United States v. Pollard*, 215 F.3d 643, 647 (6 th Cir. 2000)).

Defendants argue that the Property was foreclosed on March 20, 2015 and quitclaimed to the Detroit Land Bank Authority on January 13, 2016 (about six months before the search). Plaintiff counters that, because he owned the Property legally, Dkt. No. 42, Ex. C at PgID 344, and no one attempted to remove Plaintiff from, or even notify Plaintiff of the foreclosure and sale of, the Property, Plaintiff had a reasonable expectation of privacy under Michigan tenancy by sufferance law. *See Hunyady*, 409 F.3d at 301:

> In Michigan, a tenant by sufferance is one "who came into possession [of the property] rightfully, by permission of the owner, and continued to occupy the premises after the expiration of his lease." *Ryal's, Inc. v. Stavropoulos*, 273 Mich. 680, 263 N.W. 770, 770 (1935); *see also School Dist. No. 11 of Alpine Township v. Batsche*, 106 Mich. 330, 64 N.W. 196, 197 (1895) ("[T]he rule is that a person in possession of land lawfully, who holds over without right, becomes a tenant at sufferance, if the owner suffers him to remain in possession a sufficient length of time to imply an intentional acquiescence in the occupancy, and it is not necessary that the previous holding be that of a tenant.").

The Court notes that the evidence reflects that Plaintiff: (a) lived at the Property, without interruption or notice that he had no right to live at the Property, for at least three years before the search occurred; and (b) has continued to live there since the search, again without interruption or notice that he has no right to live there. As Plaintiff suggests, the fact that all of the foreclosure proceedings related to the address 16087 Manning – not 16089 Manning, constitute evidence that could support his lack of notice regarding any legal action taken with respect to the Property. Accordingly, the Court finds that there is a genuine dispute whether Plaintiff had a reasonable expectation of privacy in the house on the Property.

**C.     Naked Detention**

With respect to the execution of the search warrant, Plaintiff alleged – and has testified – that: (a) Defendants refused Plaintiff's request to be allowed to put on clothing; and (b) Plaintiff had to remain naked for the entirety of the 35-45 minute search. Dkt. No. 42, Ex. E at PgID 363; Dkt. No. 44, Ex. 1. Defendants deny that Plaintiff was naked, and Graves submitted a subsequent affidavit rebuking Plaintiff's affidavit and indicating that Plaintiff was not naked during the execution of the search. *See* Dkt. No. 45, Ex. L. Graves avers that Plaintiff was wearing shorts and a tank top the whole time. *Id.* But, Graves' affidavit does not overcome Plaintiff's testimony and affidavit for purposes of the instant summary judgment motion, as the Court must

view all facts in a light most favorable to Plaintiff. *Hall v. Shipley*, 932 F.2d 1147, 1153 (6th Cir. 1991).

The Court concludes that none of the individual Defendants are entitled to qualified immunity – and that summary judgment is denied – with respect to Plaintiff's Section 1983 claim stemming from the execution of the search. The Sixth Circuit has "conclude[d] that a reasonable officer in [the] officers' position would have known that requiring an individual to sit naked [for twenty or thirty minutes] . . . would violate such individual's 'clearly established' rights." *Shipley*, 932 F.2d at 1153-54 (citations omitted). Graves and Stewart admit that they secured and interrogated Plaintiff at the scene, so both of them are subject to liability with respect to Plaintiff's claim based on the execution of the search. *Id.*

There is evidence that the other individual Defendants saw Plaintiff being detained naked throughout the execution of the search warrant. For that reason, each of them (and Graves and/or Stewart, to the extent either or both of them did not physically detain Plaintiff) is subject to Section 1983 liability because he did nothing to stop the violation of Plaintiff's clearly established right to not be detained naked for an extended period of time. *See, e.g., id; Durham v. Nu'Man*, 97 F.3d 862, 867-68 (6th Cir. 1996) (holding that hospital security officer who failed to protect inmates or patients from assault by other officers could be held liable for failing to intervene);

*McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990) ("a correctional officer who observes an unlawful beating may . . . be held liable under § 1983 without actively participating in the unlawful beating"); *Bruner v. Dunaway*, 684 F.2d 422, 424 (6th Cir. 1982) (holding that officer who stood by and did nothing while the plaintiff was beaten by other officer could be held liable).

The Court denies Defendants' motion for summary judgment with respect to Plaintiff's claim that his constitutional rights were violated when the individual Defendants required Plaintiff to remain naked throughout the execution of the search warrant.

**D.     City of Detroit**

In his First Amended Complaint, Plaintiff alleged that Defendant City of Detroit has implemented, with deliberate indifference to the constitutional rights of Plaintiff and other similarly situated individuals, certain customs, policies, or practices that violate his rights under the United States Constitution. A municipal defendant can only be subject to direct liability if it causes the constitutional harm because it "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by" that body's officers. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Id*. at 694. A plaintiff cannot allege a viable claim based solely on vicarious liability or *respondeat superior*. *Id*. at 691. The municipality's policy (or absence of one) must be a "moving force" in the deprivation of the plaintiff's constitutional rights and such policy must have arisen from "deliberate indifference" to the rights of its citizens. *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996).

The First Amended Complaint conclusorily alleges a number of alleged practices, policies, or customs that were a proximate cause and a moving force in the alleged violation of Plaintiff's constitutional rights. The First Amended Complaint does not identify any specific facts or officers who engaged in action(s) pursuant to such practices, policies, or customs. In his response brief, Plaintiff fails to offer: (1) evidence of any practice, policy, or custom that was the proximate cause and moving force behind the violation of his rights; or (2) even any argument regarding such a practice, policy, or custom.

The Court concludes that Plaintiff's municipal liability claim is not supported by sufficient evidence to withstand summary judgment and grants Defendants' Motion for Summary Judgment on Plaintiff's municipal liability claim.

V. **CONCLUSION**

Accordingly,

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment. [Dkt. No. 42]

With respect to Count I, (a) Defendants Graves, Clark, Rhodes, and Bukowski are dismissed with respect to Plaintiff's claim based on the search itself; (b) Plaintiff's claim against Defendant Stewart with respect to the search itself continues; and (c) Plaintiff's claim based on the execution of the search claim – specifically, the naked detention of Plaintiff – continues against all individual Defendants.

With respect to Count II, Plaintiff's claim for municipal liability against Defendant City of Detroit is dismissed.

IT IS ORDERED.

S/Denise Page Hood<br>
Denise Page Hood<br>
Chief Judge, United States District Court

Dated:  May 1, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 1, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry<br>
Case Manager